IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EUGENE SCALIA, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR | § § § § | |
| Plaintiff, | § § | |
| v. | § | Case No. 3:20-cv-00984-S |
| ONSITE OIL TOOLS 401(k) PLAN, | § § § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Eugene Scalia, Secretary of Labor for the United States Department of Labor, filed a Motion for Default Judgment (ECF No. 7) in this civil action arising under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* For the following reasons, the District Court should GRANT the Motion and enter a default judgment against Defendant Onsite Oil Tools 401(k) Plan, consistent with these Findings, Conclusions, and Recommendation.

**Background**

In his Complaint filed on April 21, 2020, the Secretary alleges that Defendant Onsite Oil Tools 401(k) Plan (the "Plan") is an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), and is subject to coverage under ERISA § 4(a), 29 U.S.C. § 1003(a). *See* Compl. 1, ¶ 4 (ECF No. 1). Onsite Oil Tools, Inc. (the "Company") established the Plan, effective September 1, 2008, for

the sole and exclusive purpose of providing retirement benefits for participants and beneficiaries. *Id.*  2, ¶ 5 & Pl.'s Mot., Ex. B 9. The Company's initial President and Owner, Mark Treadwell, signed Plan documents—including a Dyatech, LLC (Dyatech) Non-Standardized 401(k) Profit Sharing Adoption Agreement and a Summary Plan Description—on the Company's behalf naming the Company as Plan Administrator. Compl. 2, ¶¶ 5, 7 & Pl.'s Mot. (ECF No. 7), Ex. B 10, ¶¶ 3, 4.

Treadwell sold the Company to Kenneth Goggans in 2013 and transferred control of the Company and the Plan in 2014, but this change was never made effective for purposes of the Plan documents. Compl. 2, ¶ 8 & Pl.'s Mot., Ex. B 10, ¶ 5. The Company ceased operations in late 2015 and early 2016. Compl. 2, ¶ 9 & Pl.'s Mot., Ex. B 10, ¶ 6. However, the Plan was not terminated when the Company ceased operations. Compl. 3, ¶ 13 & Pl.'s Mot., Ex. B 11, ¶ 11.

As of December 28, 2015, the Plan had $502,782.60 in assets and seventeen participants. Compl. 3, ¶ 14 & Pl.'s Mot., Ex. B 10–11, ¶¶ 11–12. The Plan assets are pooled and held by American Funds, Amundi Pioneer, Davis Funds, Franklin Templeton, Lord Abbett, Nuveen, and Oppenheimer. Compl. 2, ¶ 12 & Pl.'s Mot., Ex. B 10, ¶ 10.

In September 2017, the Dallas Regional Office of the Employee Benefits Security Administration (EBSA) opened an investigation involving missing contributions to the Plan.  Compl. 2, ¶ 11 & Pl.'s Mot., Ex. B 10, ¶ 8. According to EBSA Investigator Gerardo Velez, the contributions were later restored to the Plan. *Id.* The EBSA also determined that the Company never appointed another

fiduciary to administer the Plan after Treadwell sold the Company and no individual or entity is currently authorized to direct the distribution of fund assets. Pl.'s Mot., Ex. B 10, ¶ 7. The Secretary claims that, as a result of this neglect, the Plan has no fiduciaries or trustees with exclusive authority and discretion to manage and control Plan assets in violation of ERISA §§ 402(a) and 403(a). Pl.'s Mot. 2, ¶ 7. According to the Secretary, Plan participants are currently unable to access their account balances, meaning the "Plan's assets are not being held for the exclusive purpose of providing benefits to participants and beneficiaries in violation of ERISA § 403(c)(1)." Compl. 3, ¶ 16. He additionally claims that since the Plan cannot issue payments without a trustee, it exists in violation of ERISA § 402(b)(4). *Id.* at 3, ¶ 16.

To address these violations, the Secretary filed this action on April 21, 2020. Compl. The Secretary properly served the Plan on April 23 by delivering a copy of the complaint to the Company's designated registered agent, Timothy Sicking, and securing a Waiver of Service of Summons. *See* Def.'s Waiver Service Summons (ECF No. 4); Pl.'s Mot., Ex. A 7, ¶ 2. No attorney or representative filed an answer or otherwise appeared on behalf of the Plan.

Upon the Secretary's request, the Clerk filed an Entry of Default against the Plan on June 25, stating it had failed to answer or otherwise defend the case as directed. (ECF No. 6). The Secretary thereafter filed the pending Motion for Default Judgment, claiming the Plan had yet to answer or otherwise respond to the

Complaint, or move to set aside the Entry of Default. Pl.'s Mot. Default J. 1–2, ¶¶ 3–5 (ECF No. 7).

The Secretary now requests that this Court enter a default judgment: (1) appointing Alpha & Omega, Inc. as successor and independent fiduciary to effectuate distribution and terminate the Plan; (2) ordering any costs associated with distributing the Plan's assets be apportioned *pro rata* among Plan participants and their beneficiaries; and (3) retaining jurisdiction on this matter so as to enforce compliance with any relief granted. *Id.* at 3, ¶¶ 1–3. The Plan failed to respond to the Secretary's Motion. Thus, the motion is ripe for determination.

## Legal Standards and Analysis

Rule 55 governs applications for default and default judgment. Fed. R. Civ. P. 55. Three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond within the time required by the Federal Rules of Civil Procedure. *Id.* The Clerk will enter a default when the party's default is established by an affidavit or otherwise. *Id.* (citing Fed. R. Civ. P. 55(a)). After the entry of default, a plaintiff may apply to the court for a default judgment. *Id.*

Default judgment is a drastic remedy, resorted to only in extreme situations. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). However, it is a remedy generally committed to the discretion of the district

court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977) (citing 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2685 (4th ed.)). To determine whether to enter default judgment, a court should examine: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (CITING CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2685 (2d ed. 1983)). After considering the Complaint, the Motion for Default Judgment, the materials supporting the Motion, and the applicable law, including the *Lindsey* factors, the Court recommends entering default judgment against the Plan.

Here, there are no material issues of fact; rather, because of the Plan's default, the Court takes as true the facts as the Secretary alleges them. *See Nishimatsu Constr.*, 515 F.2d at 1206; *see also Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, 2017 WL 373478, at *2 (N.D. Tex. Jan. 26, 2017). Additionally, there is no substantial prejudice against the Plan. It was properly served, the grounds for default against it are clearly established, and the Clerk properly entered default against it. There is also nothing before the Court indicating that the Plan's failure to appear was a good-faith mistake or the result of excusable neglect. And entering default judgment against a defendant, who has

taken no action to respond to a suit, is not "harsh." *Verch v. White Rock Sec. Group, LLC*, 2020 WL 4550419, at \*2 (N.D. Tex. June 30, 2020) (Rutherford, J.) (citing Joe *Hand*, 2017 WL 373478, at \*2), *adopted by* 2020 WL 4530716 (N.D. Tex. Aug. 6, 2020) (Scholer, J.). The Plan has had six months to respond to the Secretary's Complaint, which mitigates the harshness of a default judgment. *See John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, 2013 WL 1828671, at \*3 (N.D. Tex. May 1, 2013) (Lynn, J.) (finding that five months to answer a complaint was long enough to mitigate the harshness of  default judgment).

The pleadings also sufficiently support a default judgment, and a remedy can be devised without a hearing. The Secretary alleges the Plan violated §§ 402(a) and 403(a) of ERISA because the benefit plan does not have a named fiduciary or trustee with the exclusive authority and discretion to manage and controls its assets. Compl. 3, ¶ 15.

Passed in 1974, ERISA is a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Chamber of Com. v. Dep't of Labor*, 885 F.3d 360, 363–64 (5th Cir. 2018) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983)). Title I of the statute grants the Department of Labor "far-reaching regulatory authority over employer- . . . welfare benefit plans." *Id.* at 364 (citing 29 U.S.C. §§ 1108(a)–(b), 1135). These plans are "best thought of as a 'written instrument' which includes the 'basic terms and conditions' governing a set of benefits offered by an employer." *Casey v. Reliance Tr. Co.*, 2019 WL 7403931, at \*5 (E.D. Tex. Nov. 13, 2019) (citing *Manuel v. Turner*

*Indus. Grp., L.L.C.*, 905 F.3d 859, 864 (5th Cir. 2018), *reh'g denied* (Nov. 2, 2018)).

Section 402(a) of ERISA requires an employee benefit plan to have "one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). Whether an individual or entity is a fiduciary is a functional test that depends on control and authority over the plan, not just labels. 29 U.S.C. § 1002(21)(A); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993); *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1459 (9th Cir. 1995). Section 403(a) similarly mandates that "all assets of an employee benefit plan shall be held in trust by one or more trustees." 29 U.S.C. § 1103(a). Such trustees must be named in the trust instrument, the plan instrument, or be appointed by a fiduciary. *Id.* Once named or appointed, the trustee "shall have exclusive authority and discretion to manage and control the assets of the plan." *Id.*

Pursuant to his authority to enforce, and prevent violations of, ERISA under ERISA 502(a)(5), the Secretary brings suit here. Compl. 3, ¶ 15; 29 U.S.C. § 1132(a)(5). Specifically, he asserts the uncontroverted facts that with Treadwell no longer participating in the Company or the Plan, and with Goggans not possessing formal control or authority over the assets, the Plan is not under the authority or discretion of a fiduciary or a trustee as required by ERISA §§ 402 and 403. *See id.* To remedy these violations, the Secretary asks this Court to (1) appoint Alpha & Omega, Inc. as the successor and independent fiduciary of the Plan; (2) order any

costs associated with distributing Plan assets be apportioned *pro rata* among eligible Plan participants and their beneficiaries; and (3) order the Court shall retain jurisdiction over this matter to enforce compliance with any relief granted now or in the future. Mot. Default J. 3, ¶¶ 1–3 (ECF No. 7). Investigator Velez states that he solicited bids from multiple independent third-party administration firms, and Alpha & Omega, Inc., a qualified termination administrator located in California, offered the best terms. Pl.'s Ex. B 11, ¶ 14. Alpha & Omega, Inc. also has agreed to an appointment as the independent fiduciary for purposes of terminating the Plan and distributing the assets to the participants. *Id.*

Under ERISA § 502(a)(5), this Court is authorized to "enjoin any act or practice which violates any provision of [ERISA]" or grant "appropriate equitable relief" to redress violations or enforce ERISA. *Chao v. Johnson*, 2005 WL 2095109, at *3 (S.D. Tex. Aug. 30, 2005) (citing 29 U.S.C. § 1132(a)(5)). The United States Supreme Court has clarified that "appropriate equitable relief" in the context of § 1132(a)(5) "includes only those types of relief that were typically available in equity, such as injunction and restitution." *Reich v. Lancaster*, 843 F. Supp. 194, 203 (N.D. Tex. Sept. 18, 1993) (citing *Mertens*, 508 U.S 248); *Truitt v. Unum Life Ins. Co. of Am.*, 2011 WL 13235054, at *4 (W.D. Tex. Mar. 14, 2011). Consequently, this Court has the authority to grant the relief that the Secretary requests.

Each of the Secretary's requests of this Court is an appropriate form of relief and should be granted. Appointing Alpha & Omega, Inc. as successor and independent fiduciary will authorize it to assert control and discretion over the

Plan's assets and appoint a trustee to assert similar control—both of which aid the Secretary in redressing violations of ERISA. And apportioning the cost of distributing Plan assets *pro rata* and ordering that this Court retain jurisdiction over this matter both facilitate the ability of Plan participants and beneficiaries to receive the benefits of the Plan.

The Plan was established for the benefit of the Company's employees making it an "employee welfare benefit plan" governed by ERISA. *See* 29 U.S.C. § 1002(1). Without an acting fiduciary or trustee, the Plan exists in violation of ERISA §§ 402 and 403. The Secretary has the authority to redress these violations and enforce ERISA pursuant to ERISA § 502(a)(5). 29 U.S.C. § 1132(a)(5). Therefore, the Secretary states a plausible claim for default judgment. And with the discretion to grant an appropriate equitable remedy, a remedy could be rendered without a hearing. As a result, the Court would not feel obligated to set aside the default upon a motion by the Plan.

All factors considered by courts in determining whether to grant default judgment have been satisfied. Accordingly, this Court should GRANT the Secretary's Motion for Default Judgment (ECF No. 7) in its entirety.

**SIGNED** October 27, 2020.

_____

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).